UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-20257-CIV-LENARD/O'SULLIVAN

**TIFFANY N. THORNE, on behalf of
herself and others similarly situated,**

    Plaintiff,

v.

**COMMONWEALTH FINANCIAL
SYSTEMS, INC.,**

    Defendant.
_____/

### ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (D.E. 56), ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE (D.E. 111), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 85), AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 107)

**THIS CAUSE** is before the Court on Plaintiff's motion for class certification and the Parties' cross-motions for summary judgment. On November 9, 2010, Plaintiff Tiffany Thorne ("Thorne") filed her Motion for Class Certification (D.E. 56).[1] On February 15, 2011, U.S. Magistrate Judge William C. Turnoff issued his Report and Recommendation ("Report," D.E. 111), recommending class certification be denied.[2] On December 20, 2010, Defendant

---

    [1] Defendant filed its response in opposition to class certification on December 2, 2010, to which Thorne filed her reply on January 4, 2011. (See D.E. 72, 90.)

    [2] On November 10, 2010, the Court referred Plaintiff's motion for class certification to the Magistrate Judge. (See D.E. 60.) On January 26, 2011, the Magistrate Judge held a hearing on the matter. (See Tr. of Hearing, D.E. 104.)

Commonwealth Financial Systems, Inc. ("CFSI") filed its Motion for Summary Judgment (D.E. 85).[3] On February 11, 2011, Thorne filed her Motion for Partial Summary Judgment (D.E. 107, 108).[4] Having reviewed the various motions, related pleadings, the Report, and the record, the Court finds as follows.

### I.   Background[5]

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* Thorne is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3), residing in Florida. CFSI is a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6), with its principal place of business in Scranton, Pennsylvania.

Several years ago, Thorne incurred a debt to Aventura Hospital for medical services rendered. She did not pay and the debt went into default. Aventura Hospital subsequently sold the debt to MedClr, a division of NCO Financial Systems, Inc., a debt collector. MedClr then referred Thorne's debt to CFSI for collection. From approximately January 2009 to January 2010, MedClr referred over 7,000 debts purchased from Aventura Hospital to CFSI for collection.

---

On March 15, 2011, Thorne filed her objections to the Report ("Objections," D.E. 123), to which Defendant filed its response ("Response," D.E. 124), on March 25, 2011.

[3]   Thorne filed her response in opposition to summary judgment on January 6, 2011, to which CFSI filed its reply on January 19, 2011. (See D.E. 93, 97.)

[4]   CFSI filed its response in opposition to partial summary judgment on March 3, 2011, to which Thorne filed her reply on March 14, 2011. (See D.E. 114, 122.)

[5]   The following facts are undisputed unless otherwise noted.

In an effort to collect these debts, CFSI utilizes a third-party named Global Connect ("Global"), to place telephone calls to certain debtors. Global uses an auto-dialer to place calls on behalf of CFSI. Global's auto-dialer places calls to those telephone numbers supplied by CFSI through a secure website. Each call placed through Global contains a pre-recorded message prompting the recipient of the call to press a button to confirm if they are the intended recipient of the call. The system is designed such that if the recipient of a call answers the phone, the pre-recorded message is played, and the recipient then has a choice. They can either press a button or hang up. If they press a button, then they are transferred to a representative who confirms that they are the alleged debtor before advising them that they are in fact a debt collector. If the recipient hangs up, then there is no disclosure. The company's policy is to not leave voicemail or messages on a recipient's answering machine. Rather, the auto-dialer is supposed to detect whether a telephone call is answered by a live person. If the call is unanswered or the auto-dialer recognizes it has reached the person's voicemail or answering machine, then the auto-dialer is programmed to disconnect the call. After a call has been placed, Global's call records only indicate whether a call was "answered" or went to a "machine." (See Bird Decl., D.E. 85-2 at ¶ 11.) In January 2009, CFSI supplied Thorne's telephone number to Global in an effort to collect Thorne's debt.

On January 27, 2009, CFSI placed a call to Thorne using Global's auto dialer. The following message was left on Thorne's answering machine:

> 2 or call us back at 1-800-848-2170. Thank you. . . . Hello. This message is only for Tiffany Thorne. If this is Tiffany Thorne, please press 1. If this is not, please

press 2 or call us back at 1-800-848-2170. Thank you.

(Pl. Decl., D.E. 110 at ¶ 4.) Global's call records indicate the January 27, 2009, call was "answered" by a live person. Thorne contends that this message violates the FDCPA because CFSI failed to identify itself as a debt collector. CFSI argues that the message left on Thorne's machine was a mistake.

On January 27, 2010, Thorne initiated this lawsuit. On November 17, 2010, she filed her First Amended Class Action Complaint ("Complaint," D.E. 64), alleging CFSI violates 15 U.S.C. § 1692e(11) by failing to disclose in its pre-recorded messages that it is a debt collector. Thorne seeks relief under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of:

> (i) all persons to whom Defendant played a pre-recorded telephone message to a telephone number with a Florida area code (ii) in which Defendant, failed to state that the message is from a debt collector (iii) in an attempt to collect an alleged debt originally due for medical care from Aventura Hospital and forwarded to Defendant by MedClr, a division of NCO Financial Systems, Inc. (iv) during the one year period prior to the filing of the complaint in this matter through the date of class certification.

(Complaint at ¶ 20.) Accordingly, Thorne seeks statutory damages, attorney's fees, and costs, under the FDCPA.

**II. Discussion**

    **A. Class Certification**

On November 9, 2010, Thorne moved for class certification. After conducting a hearing, the Magistrate Judge issued his Report recommending denial of class certification. First, the

Report finds Thorne is unable to prove by a preponderance of the evidence or with any degree of certainty that the class is so numerous that joinder of all members is impracticable under Rule 23(a). Based upon Thorne's proposed class definition, the Magistrate Judge concluded that Thorne is actually attempting to certify two distinct classes: (1) those who received the pre-recorded message on their answering machines or voicemail (like Thorne); and (2) those who heard the pre-recorded message when they answered their phones. Because the system is designed such that the call records only indicate whether a phone call was "answered" or picked up by a "machine," the Magistrate Judge concluded it would be difficult to ascertain with any degree of certainty what other consumers may have also accidentally received a pre-recorded message on their answering machines. Second, even assuming Thorne was able to satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), the Magistrate Judge found questions of law or fact common to the class would not predominate over individual issues and a class action would not be superior to other methods of resolving these claims under Rule 23(b)(3).

In her Objections, Thorne suggests the Court should apply a "traditional mailbox rule."[6] In essence, Thorne offers that a class should be certified regardless of whether class members received the pre-recorded message on their voicemail or as a live call. Thorne argues that the pre-recorded message itself is a violation committed with each telephone call to an alleged debtor. Thus, Thorne believes she has met the numerosity requirement of Rule 23(a). Thorne

---

[6] Thorne fails to cite any case law in support of her notion of the "traditional mailbox rule."

estimates that of the 7,111 accounts assigned to CFSI, 1,327 persons received automated telephone calls. If only ten percent of those people contacted failed to press a number on their phone or disconnected the call, then there would still be 132 putative class members who heard the pre-recorded message without any disclosure.

In response, CFSI agrees with the Magistrate Judge that this case is ill-suited for class certification. First, CFSI notes that only "consumers" under the FDCPA are entitled to certain disclosures under 15 U.S.C. § 1692e(11). Thus, each putative class member would have to prove that they were a consumer, or the person "obligated or allegedly obligated to pay any debt," and that they heard the pre-recorded message. CFSI further argues that there is no way to determine who received the message on their voicemail by mistake (like Thorne) or whether anyone who supposedly answered the phone and hung up without speaking to a CFSI employee was a "consumer." CFSI sets forth that its practice is clear. Until it is able to confirm that it is communicating with the debtor or alleged debtor, it does not disclose information relating to the debt in fear of violating 15 U.S.C. § 1692b(c). Once it confirms that it is dealing with the debtor, it provides the disclosures required by 15 U.S.C. § 1692e(11).

Prior to certifying a class action, district courts must conduct a "rigorous analysis" of whether a putative class meets the requirements of Rule 23 of the Federal Rules of Civil Procedure. See Castano v. Am. Tobacco Co., 84 F.3d 734, 740 (5th Cir. 1996). "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. ___, 2011 WL 2437013 at *7 (June 20, 2011). "A party seeking class certification must affirmatively

demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Id.

### 1. Rule 23(a)

Rule 23(a) lists the prerequisites to a class action and states:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(A). Parties seeking class certification bear the burden of establishing each element of Rule 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation. See Valley Drug Co. v. Geneva Pharms., Inc., 350 F.3d 1181, 1187 (11th Cir. 2003); Jones v. Jeld-Wen, Inc., 250 F.R.D. 685, 692 (S.D. Fla. 2008).

The Court agrees with the Magistrate Judge that Thorne has not affirmatively met her burden in proving that there are in fact sufficiently numerous parties such that joinder would be impracticable. Thorne urges certification of a class of everyone who heard CFSI's pre-recorded message, whether that person answered the telephone call and heard the message live or the message was accidentally left on their voicemail or answering machine. The flaw with such a proposed class is that section 1692e(11) only requires disclosure to consumers. CFSI's call records only indicate whether a telephone call was answered. If a person were to listen to the recording and hang up without pressing a button, there is simply no way to know whether the recipient was a consumer or a third-party (in which case disclosure could result in a

violation of section 1692b(c)). As the Magistrate Judge notes, it cannot be that Congress intended that individuals could create their own cause of action by terminating a telephone call before a debt collector can verify with whom it is speaking or provide any required disclosures. Additionally, CFSI's account notes and Global's call records would not provide information as to how many other instances have occurred where a message was mistakenly left on a consumer's answering machine. (See Snyder Decl., D.E. 78 at ¶¶ 11-13.) The records only indicate whether the automated call was "answered" or went to a "machine." Global's dialer mistakenly believed Thorne's answering machine was a live person and as such the call was recorded as "answered." Thorne presents only speculation as to the size of the proposed class based upon the number of persons she believes received a phone call and sheer guesses as to the proportion of those calls that were received by consumers. Accordingly, the Court agrees with the Magistrate Judge that Thorne fails to establish with any degree of certainty that there exists a class of putative plaintiffs so numerous that joinder would be impracticable. Thus, Thorne fails to meet the requirements of Rule 23(a) and class certification is inappropriate. Assuming Thorne was able to meet the requirements of Rule 23(a), the proposed class would still fall short under Rule 23(b)(3).

### 2.     Rule 23(b)(3)

"In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b)." Jeld-Wen, 250 F.R.D. at 694 (quoting Amchem Products, Inc. v. Windsor, 521

U.S. 591, 614 (1997)). Thorne contends her proposed class meets the requirements to certify a class under Rule 23(b)(3).

In order to certify a class under Rule 23(b)(3), the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(B)(3); see Amchem Products, 521 U.S. at 615 ("To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"). These requirements are frequently referred to as "predominance" and "superiority."

### a. Predominance

In order to satisfy the predominance inquiry under Rule 23(b)(3), Plaintiffs need not demonstrate that every question of law or fact is common to the class. See Jeld-Wen, 250 F.R.D. at 694 ("Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions.") (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004)). The predominance inquiry, however, is much more stringent than Rule 23(a)(2)'s requirement of commonality. See id.; Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997). In determining whether common issues predominate over individual ones, district courts

should look at the "claims, defenses, relevant facts, and applicable law, to assess the degree to which resolution of the classwide issues will further each individual class member's claim." Klay, 382 F.3d at 1254 (internal citation omitted).

The Court finds that common issues of law or fact do not predominate over those individual issues that would arise with the proposed class. As stated above, there is no verifiable manner for determining who else may have received a pre-recorded message from CFSI on their voicemail as happened to Thorne. According to CFSI, it has a policy of not leaving voice messages and they have not received any similar complaints in the last seven years as a result of Global's automated calls. (See Snyder Decl., D.E. 85-1 at ¶ 12.) Thorne may have been the only person who received such a message. Moreover, even if a class was certified including those who answered the phone (rather than receiving a voice message), each putative plaintiff would still be required to prove that they heard the pre-recorded message and that they were a "consumer." Where such individualized proof is required and there are few common questions, the Court finds Thorne's proposed class fails the "predominance" requirement of Rule 23(b)(3).

**2.    Superiority**

Rule 23(b)(3)'s other requirement is that class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(B)(3). "To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling

10

the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Jeld-Wen, 250 F.R.D. at 695 (citing Rule 23(b)(3)); see also De Leon-Granados v. Eller & Sons Trees, Inc., 497 F.3d 1214, 1220 (11th Cir. 2007)).  There is no discernible advantage to certifying Thorne's proposed class.  It would be much simpler for any other similarly aggrieved parties, if they exist, to bring their own lawsuits.  The Court finds that class resolution would not be a superior method for a fair and efficient resolution of any claims similar to Thorne's.  Thus, Thorne's proposed class also fails Rule 23(b)(3)'s superiority requirement and class certification must be denied.

### B.   Summary Judgment

Both sides seek summary judgment on the issue of liability.  CFSI concedes that the message mistakenly left on Thorne's voicemail failed to comply with 15 U.S.C. § 1692e(11). Rather, CFSI seeks summary judgment on its "bona fide error" defense. In support, CFSI offers evidence that it never intended that the message should be left on Thorne's voicemail including evidence that: (a) CFSI maintains a policy of not leaving voice messages in fear of violating the FDCPA; (b) the computer system utilized by CFSI is designed to detect when a phone call is answered by a live person and the pre-recorded message it uses is designed to play *only* if the call is answered by a live person; (c) Global's dialer was programmed to disconnect the call if

the call went to an answering machine or voicemail; (d) Global conducts testing to determine whether the dialer is able to accurately distinguish between live persons or answering machines; (e) CFSI maintains extensive procedures designed to prevent FDCPA violations including "extensive employee training on compliance with the FDCPA/FCCPA, publication of an in-house compliance manual, frequent employee evaluations on compliance, consultation with outside counsel to track changes to state and federal collection laws, and a requirement that all CFSI employees pass an examination on the FDCPA on a yearly basis"; and (e) CFSI has not received any complaints in the last seven years related to Global's dialer and that only on "rare occasions" does the computer system malfunction as it did in this case. (See Snyder Decl., D.E. 78, 85-1.) CFSI contends there is no evidence that the message left on Thorne's machine was intentional or anything but a bona fide error. Additionally, it points to the various procedures it maintains as proof that similar mistakes do not occur regularly.

Conversely, Thorne contends the pre-recorded message was an intentional communication regardless of whether CFSI intended to leave a message. Accordingly, Thorne argues she is entitled to summary judgment on CFSI's defense or at the very least a jury should decide whether CFSI committed a bona fide error.

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

13

issue for trial.'" Id. at 324; see also FED. R. CIV. P. 56(e).  In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Id. at 587.  An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Id.  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Liberty Lobby, 477 U.S. 242 (1986)).

Debt collectors are typically held strictly liable for violations of the FDCPA. "Nevertheless, the FDCPA affords a narrow carve-out to the general rule of strict liability, known as the 'bona fide error' defense."  See Owen v. I.C. System, Inc., 629 F.3d 1263, 1271 (11th Cir. 2011).  Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  The debt collector bears the burden of proving the affirmative defense of "bona fide error" and must show by a preponderance of the evidence that the violation: (1) was not intentional; (2) was a "bona fide error"; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error.  See Owen, 629 F.3d at 1271; Edwards

v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352-53 (11th Cir. 2009). The third component of this analysis, or the "procedures component," involves a two-step inquiry. Owen, 629 F.3d at 1273-74 (citing Johnson v. Riddle, 443 F.3d 723, 729 (10th Cir. 2006)). "The first step is 'whether the debt collector maintained'--i.e., actually employed or implemented-- procedures to avoid errors." Id. at 1274 (internal citations omitted). "The second step is 'whether the procedures were reasonably adapted to avoid the specific error at issue.'" Id. The Eleventh Circuit has characterized this inquiry as "fact-intensive" and one dependent upon "the particular facts and circumstances of each case."

CFSI presents evidence that the voice message it left on Thorne's machine was unintentional and a bona fide error. The language of the message itself indicates it was not intended to be left on an answering machine. CFSI also presents evidence that it maintains a policy of not leaving voice messages and that Global maintains sophisticated technology to determine when telephone calls are answered by live persons as opposed to answering machines. Nevertheless, there are genuine issues of material fact regarding the procedures component of the bona fide error defense. CFSI states that what happened in this case was a rare mistake. Darrin Bird, Global's Executive Vice President, states that only "[o]n extremely rare occasions" does the computer system "believe" the call has been answered by a live person when it has been answered by voicemail or a machine. (See D.E. 85-2 at ¶ 13.) CFSI presents evidence that it routinely trains and tests its employees regarding FDCPA compliance. CFSI also states that it has not received any similar complaints in the last seven years pertaining to

Global's dialer. (See Snyder Decl., D.E. 85-1 at ¶ 12.) CFSI also states that Global conducts tests to ensure the technology functions properly. (See Snyder Decl., D.E. 78 at ¶ 20.) Nevertheless, CFSI does not provide any evidence regarding how frequently Global conducts this testing, how it conducts this testing, or any results of such testing. It does not provide much of any detail as to how the supposedly "sophisticated technology" safeguards against similar mistakes. Moreover, CFSI's training and testing procedures for its employees are not adapted to fix the specific error at issue in this case. Rather, CFSI contends that it is entitled to summary judgment on its "bona fide error" defense simply because these types of mistakes are "rare" and the technology is designed to function properly. As factual issues remain precluding summary judgment on CFSI's "bona fide error" defense, the Court finds both motions for summary judgment must be denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Magistrate Judge's Report and Recommendation (D.E. 111), is **ADOPTED**;

2. Plaintiff's Motion for Class Certification (D.E. 56), is **DENIED**;

3. Defendant's Motion for Summary Judgment (D.E. 85), is **DENIED**;

4. Plaintiff's Motion for Partial Summary Judgment (D.E. 107), is **DENIED**.

**DONE AND ORDERED** in Chambers, at Miami, Florida, this 21st day of June, 2011.

                                              _____
                                              **JOAN A. LENARD**
                                              **UNITED STATES DISTRICT JUDGE**